[Cite as *State v. Johnson*, 2023-Ohio-2008.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


State of Ohio                                          Court of Appeals No.  L-22-1095

       Appellee                                     Trial Court No.  CR0202101710

v.

Adrian Johnson, Jr.                            **DECISION AND JUDGMENT**

       Appellant                                     Decided:  June 16, 2023

* * * * *

Julia R. Bates, Lucas Count Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Brian A. Smith, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Adrian Johnson Jr., appeals the March 30, 2022 judgment of the
Lucas County Court of Common Pleas sentencing him to an indefinite period of 4 to 6
years in prison.  For the following reasons, we affirm.

## I. Background and Facts

{¶ 2} Johnson was charged with one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony.   Johnson and the state reached an agreement under which Johnson would plead no contest to the indictment, and the state would recommend a prison term of 4 to 6 years.

{¶ 3} At the plea hearing, the trial court engaged Johnson in a colloquy and reviewed his rights under Crim.R. 11.  As relevant to this appeal, the court explained Johnson's no-contest plea as follows:  "You are entering a plea of no contest and a plea of no contest is not an admission of guilt.  * * * However, by entering this plea you're telling me that you're not objecting to the charges, nor are you going to object to a statement from the Prosecutor as to what the evidence would be if this matter were to proceed to trial."  The plea agreement that Johnson signed contained similar information:  "By pleading no contest, I understand the Court will decide my guilt on the offenses to which I have pled based upon the facts as set forth in the indictment and upon the statement by the prosecutor about the evidence which would have been presented at trial."

{¶ 4} As the factual basis for Johnson's plea, the state said, "on or about March 1st, 2021 the Defendant, Adrian Johnson, did knowingly cause serious physical harm to another.  Specifically, on March 1st, 2021 the Defendant assaulted corrections officer

2.

D.M.  The Defendant picked the corrections officer up and body slammed him.  The officer was transported to the hospital, [and] he did sustain serious injury * * *.”

{¶ 5} The court accepted Johnson's plea and found him guilty.  It also ordered a presentence investigation report (“PSI”) and set the matter for sentencing.

{¶ 6} At the sentencing hearing, Johnson's attorney explained that Johnson was serving a prison sentence on a Cuyahoga County case and had approximately seven and one-half years remaining on his sentence.  While he was in prison, Johnson "had no other problems" at the institution, and his case manager described him as "mild-mannered, agreeable, not a troublemaker * * *."  Regarding the assault underlying the indictment, counsel said that Johnson  "did have a confrontation with the corrections officer, there was a video on the incident, it does appear that the corrections officer did spray mace at [Johnson], but [Johnson] did take action which did cause injuries to the corrections officer."  He also said that Johnson's actions that day were "not his character."  Counsel believed that Johnson's assault of a corrections officer was an "isolated incident[.]"  Additionally, counsel noted that Johnson had graduated high school and taken some college classes.  Counsel also requested that the court impose the sentence in this case concurrently with the sentence that Johnson was serving in the Cuyahoga County case.

{¶ 7} When he spoke in his own behalf, Johnson told the court that he is "a nice person[,]" he is "not a bad person, this was just a mistake that got out of hand."  He explained that he did not try to provoke or cause an argument with the corrections officer,

3.

but "[t]he CO really just, kind of, caught [him] on a bad day and really provoked [him]." As Johnson explained the incident:

> [the corrections officer] said some stuff to me and he addressed me by my shirt not being buttoned. I walked away, and then he made a comment saying that he was gonna dump me if I walked up on him again. I asked him, what did he say? And he maced me. And then I, fearing for my life—being in prison over four years I just seen COs and other inmates get sprayed and the other inmates run up and jump—intervene and jump into the fight, people get stabbed, get killed. * * * He maced me, I couldn't see, and I, really, just defended myself. And I never meant to hurt him severely or anything like that though.

Johnson's statements to the trial court are consistent with his version of events in the PSI.

{¶ 8} Before imposing sentence, the trial court reviewed some of the pertinent information from Johnson's PSI:

> the corrections officer caught you on a bad day, so you picked him up and body slammed him to the ground. This rendered him unconscious. He suffered a concussion, his eye was swollen shut, he lost vision in his eye for weeks. He still suffers from that incident. Also, you caused him psychological harm that day, he has flashbacks and nightmares. * * * This even caused him to have to terminate his employment. He could have been

4.

killed, Mr. Johnson. You're very lucky that he wasn't. * * * [Y]ou are serving a sentence at the Toledo Correctional Institution now, where you committed this offense. You have a total of three prior felony convictions and 11 misdemeanor convictions. And you admit you assaulted the officer, but you lack genuine remorse.

The court then sentenced Johnson to an indefinite prison term of 4 to 6 years.

{¶ 9} The court ordered Johnson to serve this prison term consecutively to the sentence that he was serving in the Cuyahoga County case. To support its imposition of consecutive sentences, the trial court determined that

> a consecutive sentence is necessary to protect the public from future crime or to punish [Johnson], and not disproportionate to the seriousness of [Johnson's] conduct or the danger [Johnson] poses. * * * [Johnson] was serving a sentence at the time he committed the offense. The harm caused was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of [Johnson's] conduct, and [Johnson's] criminal history requires consecutive sentences.

{¶ 10} In its March 30, 2022 sentencing entry, the court repeated its reasons for imposing consecutive sentences:

[C]onsecutive sentence [sic] are necessary to protect the public from future crime or to punish [Johnson] and are not disproportionate to the seriousness of [Johnson's] conduct and to the danger [Johnson] poses to the public. * * * [T]he harm caused was great or unusual such that no single prison term is adequate, [Johnson] was serving a prison sentence when the offense was committed and [Johnson's] criminal history demonstrates that consecutive sentences are necessary to protect the public * * *.

{¶ 11} Johnson now appeals, raising two assignments of error:

I. Appellant's no contest plea was not knowingly, intelligently, and voluntarily made, because the trial court failed to properly advise Appellant of the consequences of a no contest plea, in compliance with Crim.R. 11(B) and Appellant's right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

II. The record does not support the trial court's imposition of consecutive sentences on Appellant pursuant to R.C. 2929.14(C)(4).

## II. Law and Analysis

### A. The trial court's imperfect compliance with Crim.R. 11 did not prejudice Johnson.

{¶ 12} In his first assignment of error, Johnson argues that he did not knowingly, intelligently, and voluntarily plead no contest because the trial court did not advise him of

the effects of his no-contest plea, as required by Crim.R. 11(B) and (C)(2)(b). He contends that the trial court failed to substantially comply with Crim.R. 11(B), and that he would not have entered the plea if the court had properly advised him. As support for this argument, he points to his statement at sentencing that the corrections officer sprayed him with mace before he assaulted the officer. He claims that this is evidence that he had an affirmative defense to the felonious assault charge and if he was "properly advised that by entering a no contest plea, he would be accepting the facts alleged in the Indictment as true, without an opportunity to contest them or provide a differing account of what took place, he would not have entered a no contest plea."

{¶ 13} The state responds that Johnson knowingly, intelligently, and voluntarily entered his plea because the trial court adequately advised him of the consequences of the plea. Further, the state contends that, assuming the court's advisement was deficient, Johnson cannot show that he was prejudiced. Finally, the state argues that Johnson's statement at sentencing did not indicate a lack of understanding of the plea he made or contradict the state's version of events.

{¶ 14} A plea of no contest in a criminal case "must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Under Crim.R. 11(C)(2), "felony defendants are entitled to be informed of various constitutional

7.

and nonconstitutional rights, prior to entering a plea." *State v. Griggs,* 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 6. When an appellant seeks to vacate his plea on appeal because

> the plea was not entered in a knowing, intelligent and voluntary manner due to the trial court's failure to comply with Crim.R. 11, "the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses [an appellant] from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the [appellant] met that burden?"

(Brackets sic.) *State v. Morgan*, 6th Dist. Lucas Nos. L-20-1156, L-21-1017, and L-21-1018, 2021-Ohio-3996, ¶ 15, quoting *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 17. Unless the trial court fails to explain a constitutional right in Crim.R. 11(C)(2)(c) or completely fails to comply with a portion of Crim.R. 11(C)—e.g., by failing to mention mandatory postrelease control, *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22—the appellant is required to show prejudice to have his plea vacated. *Dangler* at ¶ 13-16.

{¶ 15} Under Crim.R. 11(C)(2)(b), a trial court cannot accept a no-contest plea without addressing the defendant and "[i]nforming the defendant of and determining that the defendant understands the effect of the plea of * * * no contest, and that the court,

8.

upon acceptance of the plea, may proceed with judgment and sentence." To inform the defendant of the effect of a no-contest plea, the trial court must inform the defendant that "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, * * * and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." Crim.R. 11(B)(2); *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 25.

{¶ 16} In Johnson's case, we find that the trial court did not fully comply with Crim.R. 11(B)(2) and (C)(2)(b). At no point did the court tell Johnson that a no-contest plea is an admission of the truth of the facts alleged in the indictment, or that the plea and admission cannot be used against him in any future civil or criminal proceedings. Crim.R. 11(B)(2); *Jones* at ¶ 25. However, the court's statement to Johnson that entering a no-contest plea meant that he is "not objecting to the charges * * *" or "object[ing] to a statement from the Prosecutor as to what the evidence would be * * *" at trial shows that the court did not completely fail to comply with Crim.R. 11(B)(2) and (C)(2)(b). *See State v. Krauzer*, 6th Dist. Lucas No. L-19-1018, 2020-Ohio-608, ¶ 11, 14 (Trial court did not completely fail to comply with Crim.R. 11 when it explained that "by entering a no contest plea, appellant was not disputing the allegations and that the court would rely on the state's representation of the evidence against him.").

{¶ 17} The trial court's imperfect compliance with Crim.R. 11(B) and (C)(2)(b) is not an error that excuses Johnson from showing prejudice, *see Dangler* at ¶ 13-16, so

9.

Johnson must show that the trial court's advisement about the effect of his no-contest plea prejudiced him. The test for prejudice is "'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Prejudice must be established on the face of the record. *Id.* at ¶ 24, citing *Hayward v. Summa Health Sys./Akron City Hosp.,* 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 26.

{¶ 18} The explanation that the trial court gave was sufficient to convey to Johnson that he was not admitting his guilt and that his plea was based on the facts in the indictment provided by the state. *See Krauzer* at ¶ 11, 14. Although the court did not tell Johnson that his plea or admission could not be used against him in future proceedings, that information is beneficial to a defendant, so its omission cannot show that the defendant was prejudiced (i.e., that the defendant would not have entered his plea if he knew that information). *Id.* at ¶ 15, citing *State v. Pettaway*, 6th Dist. Lucas No. L-13-1093, 2014-Ohio-3513, ¶ 9; *State v. Conard*, 11th Dist. Ashtabula No. 2019-A-0065, 2020-Ohio-6673, ¶ 39, citing *State v. Dundics*, 2016-Ohio-1368, 62 N.E.3d 1013, ¶ 21 (11th Dist.); and *Cleveland v. Kutash,* 8th Dist. Cuyahoga No. 99509, 2013-Ohio-5124, ¶ 22.

{¶ 19} Johnson also argues that his statements at the sentencing hearing— specifically, his statement that the corrections officer "maced" him—show that he "did not subjectively understand the consequences of a no contest plea under Crim.R. 11(B) *

10.

* *." He claims that "[h]ad [he] been properly advised of the consequences of a no contest plea, he would have chosen to try the case, either to the trial court or to a jury, and to present evidence and give his version of the facts." But the record does not support this argument. Johnson does not claim that he or his attorney were unaware at the time Johnson entered his plea that the corrections officer had sprayed mace on Johnson. The plea agreement that Johnson signed specifically said that "[t]he charges have been explained to me by my attorney and the Court. *I understand the nature of the charges and the possible defenses I might have*." (Emphasis added.) Neither Johnson nor his attorney objected to the facts that the state presented at the plea and sentencing hearings. And Johnson did not attempt to withdraw his plea. Taken together, this falls short of demonstrating that Johnson would not have pleaded no contest if the trial court had properly advised him of the effect of a no-contest plea.

{¶ 20} Johnson makes much of the fact that the state did not mention the corrections officer spraying him with mace in its statement of facts at the plea hearing. But, in a felony case, the state is not required to provide an explanation of circumstances before the court can find the defendant guilty. *State v. Rohda*, 6th Dist. Lucas Nos. L-05-1278 and L-05-1280, 2006-Ohio-6463, ¶ 21. All that is required is that the indictment, information, or complaint contain allegations sufficient to state a felony offense; if it does, the trial court must find the defendant guilty. *State v. Bird*, 81 Ohio St.3d 582, 584,

11.

692 N.E.2d 1013 (1998), citing Crim.R. 11(B)(2); and *State ex rel. Stern v. Mascio*, 75 Ohio St.3d 422, 425, 662 N.E.2d 370 (1996).

{¶ 21} An indictment that states the charged offense in terms of the statute—without more—is sufficient to convict a defendant following a no-contest plea. *E.g., State v. Magnone*, 2016-Ohio-7100, 72 N.E.3d 212, ¶ 48, 53 (2d Dist.). The exception to this rule is when the state provides an explanation of circumstances that "absolutely negates" an element of the charged offense. *State v. Huffman*, 3d Dist. Hancock No. 5-19-37, 2020-Ohio-1062, ¶ 9; *Rohda* at ¶ 21. In that case, the trial court cannot find the defendant guilty. *Id.* But self-defense is an affirmative defense, and an affirmative defense is not an element of a crime. *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, --- N.E.3d ----, ¶ 24. Importantly, a "claim of self-defense is not necessarily inconsistent with [a defendant's] plea of no contest to felonious assault, or necessarily indicative of a lack of understanding of the nature and effect of the plea." *State v. Ormes*, 2d Dist. Montgomery No. 20084, 2004-Ohio-2194, ¶ 32.

{¶ 22} The indictment alleged that Johnson "did knowingly cause serious physical harm to another * * *" in violation of R.C. 2903.11(A)(1). This is sufficient to charge Johnson with felonious assault under R.C. 2903.11(A)(1), and, if assumed true, to convict Johnson following a no-contest plea. *See Bird* at 584-585. Although the state provided additional factual information to the court, the addition of Johnson being maced to the explanation of circumstances would not have required the trial court to find Johnson not

12.

guilty. That fact—either standing alone or combined with the facts the state presented to the trial court—does not absolutely negate any of the elements of felonious assault; the information before the court would still show that Johnson knowingly caused physical harm to the corrections officer.

{¶ 23} Further, Johnson acknowledged in the plea agreement that he knew of any potential defenses that he might have to the charge of felonious assault before he pleaded no contest. He does not argue that either he or his attorney were unaware of the facts that he might have relied on to claim self-defense before Johnson entered his plea, or that his attorney failed to advise him about the potential availability of the defense. Nor did Johnson or his attorney try to claim at sentencing that the corrections officer spraying Johnson with mace was a defense to the charge; they mentioned it to try to mitigate the sentence the trial court was going to impose. On this record, we do not see how the state saying at the plea hearing that Johnson was maced before assaulting the corrections officer would have changed how Johnson proceeded with the case.

{¶ 24} Because the record does not support Johnson's argument that his plea was not knowingly, voluntarily, and intelligently made, his first assignment of error is not well-taken.

## B. The record supports consecutive sentences.

{¶ 25} In his second assignment of error, Johnson argues that the record does not support the trial court's imposition of consecutive sentences. He contends that (1) there

13.

were "mitigating circumstances" that weighed against the trial court's proportionality finding; (2) his clean disciplinary record while in prison weighed against the trial court's proportionality finding; (3) the length of time remaining on his Cuyahoga County sentence weighed against the trial court's finding under R.C. 2929.14(C)(4)(c); and (4) his educational history weighed against the trial court's proportionality finding.

{¶ 26} The state responds that Johnson's challenge of his consecutive sentences is really a disguised attempt to challenge the trial court's application of R.C. 2929.11 and 2929.12. It also contends that Johnson's complaint is not that the record does not support the trial court's findings; rather, the state interprets Johnson's arguments as disputing the weight that the trial court gave to each factor.

### 1. Standard of review

{¶ 27} We review sentencing challenges under R.C. 2953.08(G)(2). The statute allows an appellate court to increase, reduce, or otherwise modify a sentence or vacate the sentence and remand the matter for resentencing only if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

{¶ 28} Because Johnson challenges the trial court's imposition of consecutive sentences under R.C. 2929.14(C)(4), R.C. 2953.08(G)(2)(a) applies.  To modify or vacate consecutive sentences under R.C. 2953.08(G)(2)(a), we must clearly and convincingly find that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4).  A sentencing court must make its findings under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate them into the sentencing entry, but it is not required to state the reasons underlying its decision.  *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.

{¶ 29} The Ohio Supreme Court recently clarified how appellate courts should review consecutive sentences in *State v. Gwynne*, Slip Opinion No. 2022-Ohio-4607, --- N.E.3d ----.[1]  The court explained that the clear-and-convincing standard of review in R.C. 2953.08(G)(2) "indicates that the legislature did not intend for appellate courts to defer to a trial court's findings but to act as a second fact-finder in reviewing the trial court's order of consecutive sentences."  *Id.* at ¶ 20.  Thus, our review of the trial court's findings is de novo.  *Id.* at ¶ 27.

{¶ 30} Because appellate review is de novo, "the appellate court essentially functions in the same way as the trial court when imposing consecutive sentences in the first instance."  *Id.* at ¶ 21.  But there are three important differences:  (1) the appellate

---

[1] We note that a motion for reconsideration of this decision is pending before the Supreme Court.

court can only review the R.C. 2929.14(C)(4) findings that the trial court actually made (i.e., "a reviewing court cannot determine for itself which of the three permissible findings within R.C. 2929.14(C)(4)(a)-(c) might apply * * *"); (2) the appellate court uses a clear-and-convincing standard, as opposed to the trial court's preponderance-of-the-evidence standard; and (3) the "ultimate question" before the appellate court is inverted (i.e., the trial court must determine whether each finding is "more likely—or more probably—true than not, * * *" but the appellate court must determine "whether it has a firm belief or conviction that the proposition of fact represented by each finding is *not* true * * *"). (Emphasis added.) *Id.*

{¶ 31} The court went on to provide "practical guidance" for appellate review of consecutive sentences. *Id.* at ¶ 24. First, the appellate court must ensure that the trial court made each of the findings required by R.C. 2929.14(C)(4). *Id.* at ¶ 25. To impose consecutive sentences, a trial court is required to make three findings: (1) consecutive sentences are "necessary to protect the public from future crime or to punish the offender * * *;" (2) imposition of consecutive sentences is not "disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public * * *;" and (3) one of the factors in R.C. 2929.14(C)(4)(a) to (c) applies. R.C. 2929.14(C)(4); *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 252. The options for the third finding under R.C. 2929.14(C)(4) are:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

If the trial court fails to make these findings, the sentence is contrary to law. *Gwynne*, Slip Opinion No. 2022-Ohio-4607, --- N.E.3d ----, at ¶ 25.

{¶ 32} The second step the appellate court must take is determining if the trial court's findings are clearly and convincingly supported by the record. *Id.* at ¶ 26. The court must vacate or modify the appellant's sentence "if even one of the consecutive-sentence findings is found not to be supported by the record under the clear-and-convincing standard * * *." *Id.* The clear-and-convincing standard requires the appellate court to have "a firm conviction or belief" that the evidence in the record does not

support the trial court's findings. *Id.* at ¶ 27. The Supreme Court made clear that R.C. 2953.08(G)(2) "does not permit—much less require or expect—an appellate court to modify or vacate an order of consecutive sentences only when it is unequivocally certain that the record does not support the findings." *Id.*

{¶ 33} Reviewing the record for clear and convincing evidence requires the appellate court to (1) determine if there is some evidentiary support in the record for the trial court's consecutive sentence findings, and (2) ensure that whatever evidentiary basis exists is "adequate to fully support the trial court's consecutive-sentence findings." *Id.* at ¶ 29.

### 2. The trial court's findings are not clearly and convincingly unsupported by the record.

{¶ 34} Johnson concedes—and we agree—that the trial court made all of the required consecutive-sentence findings on the record and in the sentencing entry. Thus, our review will focus on whether the record supports the trial court's findings.

{¶ 35} Johnson primarily argues that the trial court's proportionality determination is unsupported by the record. The "proportionality analysis [required by R.C. 2929.14(C)(4)] 'does not occur in a vacuum, but, instead, focuses upon the defendant's current conduct and whether this conduct, in conjunction with the defendant's past conduct, allows a finding that consecutive service is not disproportionate [to the seriousness of the defendant's conduct and to the danger the defendant poses to the

18.

public].'" *State v. Kelly*, 2d Dist. Clark No. 2020-CA-8, 2021-Ohio-325, ¶ 80, quoting *State v. Crim*, 2d Dist. Clark No. 2018-CA-38, 2018-Ohio-4996, ¶ 11.

{¶ 36} Johnson's "'current conduct'" that the trial court had to consider was him body slamming a corrections officer following a verbal exchange and causing significant, lasting injuries to the corrections officer. The court also considered Johnson's lack of remorse regarding the incident. Weighing against this, Johnson points to the facts that the corrections officer sprayed him with mace before the altercation became physical, he did not have a disciplinary record while in prison, and he has education and training that make him employable and, thus, less likely to reoffend. However, when the trial court looked at the fight combined with Johnson's past harassing and violent conduct—including juvenile adjudications for disorderly conduct, attempted assault, resisting arrest, and aggravated menacing (among others) and adult convictions of felonious assault and aggravated robbery with a firearm specification—the court concluded that consecutive sentences were not disproportionate to the seriousness of Johnson's conduct and the danger he poses to the public. Based on this information, we cannot say that we have a "firm belief or conviction" that the trial court's proportionality analysis is unsupported by the evidence in the record. *Gwynne*, Slip Opinion No. 2022-Ohio-4607, --- N.E.3d ----, at ¶ 23.

{¶ 37} Regarding the trial court's finding that Johnson's criminal history showed that consecutive sentences were necessary to protect the public from future crime by

19.

Johnson, before a trial court makes a finding under R.C. 2929.14(C)(4)(c), "it must determine whether the defendant's criminal history demonstrates the need for a lengthy prison term to adequately protect the public from the threat of future crimes by the defendant." *Id.* at ¶ 15. But a trial court is not required to state the reasons underlying its decision to impose consecutive sentences; it must only make the statutorily-required findings at the sentencing hearing and in the sentencing entry. *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at syllabus.

{¶ 38} Johnson argues that the trial court ignored the length of the Cuyahoga County prison term—which will keep him incarcerated until 2029—and when the prison term is combined with his criminal history, the record does not support consecutive sentences. However, the trial court had Johnson's PSI before it, and information about the Cuyahoga County sentence is in the PSI. This is sufficient to show that the trial court took the Cuyahoga County sentence into account in determining that consecutive sentences were appropriate. *See State v. Boyd*, 7th Dist. Belmont No. 21 BE 0048, 2023-Ohio-1120, ¶ 68 (appellant's criminal history supported consecutive sentences, despite the trial court's cursory reference to his record at the sentencing hearing, because the PSI detailed appellant's past crimes). Further, the PSI showed that Johnson exhibited a pattern of criminal behavior, including offenses of violence and use of firearms, that began when he was 16 years old and continued despite the imposition of sanctions— including prison time. On balance, we cannot say that we have a firm belief or

20.

conviction that the trial court's finding under R.C. 2929.14(C)(4)(c) is unsupported by the evidence in the record.

{¶ 39} Johnson's second assignment of error is not well-taken.

### C. The state did not properly raise the issue of postrelease control.

{¶ 40} Finally, we must address the notice of conceded error that the state filed with its merit brief. In it, the state asserts that "it has conceded reversible error * * * relating to the imposition of post-release control * * *."

{¶ 41} The state's notice appears to be an attempt to comply with 6th Dist.Loc.App.R. 10(H), which states that "[i]f a party has conceded reversible error in the filing of a brief, that party and/or the opposing party, shall file a notice or a joint notice of conceded error with the clerk within 10 days advising the court of the conceded error." Johnson, however, did not raise any issue regarding postrelease control in his merit brief, nor did he address the state's notice in his reply brief. Accordingly, Johnson has not raised any error relating to postrelease control for the state to "concede."

{¶ 42} Moreover, under App.R. 3(C)(1), "[w]hether or not an appellee intends to defend an order on appeal, *an appellee who seeks to change the order * * * shall file a notice of cross appeal* with the clerk of the trial court * * *." (Emphasis added.) When the appellee "intends to defend an order appealed by an appellant on a ground other than that relied on by the trial court but [] does not seek to change the order * * *[,]" it is not required to file a cross-appeal. App.R. 3(C)(2). If the appellee does not file a notice of

21.

cross appeal when one is required, we do not have the authority to consider the appellee's arguments. *State v. Wilcox*, 1st Dist. Hamilton No. C-190495, 2021-Ohio-2282, ¶ 7-8; *see also State v. Brazil*, 6th Dist. Wood No. WD-13-040, 2014-Ohio-995, ¶ 14, citing *State v. Oke*, 6th Dist. Wood Nos. WD-04.082 and WD-04-083, 2005-Ohio-6525, ¶ 54.

{¶ 43} In this case, the state is doing more than asking us to decide this appeal on a ground not used by the trial court; it is asking us to modify the trial court's sentencing order. But Johnson did not assign any error relating to postrelease control, and the state did not file a notice of cross appeal. Accordingly, we do not have authority to consider the "error" raised by the state in its notice of conceded error. *See Wilcox* at ¶ 8; *Brazil* at ¶ 14.

### III. Conclusion

{¶ 44} For the foregoing reasons, the March 30, 2022 judgment of the Lucas County Court of Common Pleas is affirmed. Johnson is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

22.

Christine E. Mayle, J.

Gene A. Zmuda, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.