[Cite as *State v. Celestine*, 2025-Ohio-1905.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

State of Ohio

    Appellee

v.

Sammy Celestine, II

    Appellant

Court of Appeals No. {86}WM-24-010

Trial Court No. 220CR000240

**<u>DECISION AND JUDGMENT</u>**

Decided:  May 27, 2025

* * * * *

Karin L. Coble, Esq., for appellant.

Katherine J. Zartman, Prosecuting Attorney for appellee.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal by appellant, Sammy Celestine, II, from the April 1, 2024 judgment of the Williams County Court of Common Pleas. For the reasons that follow, we affirm the trial court's judgment.

{¶ 2} Celestine sets forth three assignments of error:

1. The trial court erred by accepting appellant's guilty plea without advising him of the maximum sentencing for the offense, thereby failing to substantially comply with Crim.R. 11(C).

2. The trial court erred by failing to take appellant's plea to the RVO specification and therefore appellant did not enter a plea to the RVO specification and the trial court erred by accepting a plea when appellant was not informed.

3. The State committed prosecutorial misconduct by referring to matters outside of the record, speculating on the victim's mental state, and by showing provocative and inflammatory pictures of the alleged victim at sentencing, causing the trial court to reject a jointly recommended sentence.

## Background

{¶ 3} On December 13, 2022, the Williams County Grand Jury indicted Celestine on one count of kidnapping, three counts of attempted murder, and four counts of rape, all felonies of the first degree. Celestine was also indicted on specifications ("specs"): that he committed the kidnapping and attempted murder counts with a sexual motivation, that he is a sexually violent predator, and that he is a repeat violent offender ("RVO").

{¶ 4} On February 26, 2024, a change of plea hearing was held where, pursuant to a negotiated plea agreement, Celestine pled guilty to: one count of attempted murder and the spec that he committed that crime with a sexual motivation, one count of rape and the spec that he is an RVO, and another count of rape. In addition, Celestine stipulated to a separate animus for the crimes, removing the possibility of merger at sentencing; the State agreed to dismiss all other charges and specs at sentencing; and the State agreed to recommend a 12-year prison term, consisting of 11 years for the crimes and an additional year for the RVO spec.

{¶ 5} When accepting the guilty pleas, the trial court engaged in a proper Crim.R. 11 colloquy regarding Celestine's constitutional rights, and he waived each right. The

2.

court, however, did not fully inform Celestine of the maximum penalty for the RVO spec. When the trial court accepted the pleas, it found that Celestine entered a knowing and voluntary admission to the RVO spec.

{¶ 6} On March 19, 2024, the sentencing hearing was held. The prosecutor made a statement on behalf of the State and requested that the trial court impose a 12-year prison sentence, the victim made a statement, and Celestine made a statement. The court then sentenced Celestine to a total prison term of 18 to 23 1/2 years. The court noted the aggregate minimum prison term of 18 years included the one-year term for the RVO spec.

{¶ 7} Celestine timely appealed.

**First and Second Assignments of Error**

{¶ 8} Since Celestine presents similar arguments in these assigned errors, we will address them together.

{¶ 9} Celestine argues that the trial court failed to substantially comply with Crim.R. 11(C) when it accepted his guilty pleas without advising him of the maximum sentence. He asserts the court did not mention the RVO spec at all, so the court erred by failing to take his plea to the RVO spec. He further contends that the court did not inform him that the RVO spec carries mandatory prison time and must run consecutively and prior to any other prison term imposed, pursuant to R.C. 2929.14(B)(2)(a), but despite the omission, the court found he entered his guilty plea to the RVO spec knowingly, intelligently, and voluntarily. Celestine submits that he "may have reasonably thought that the trial court's recitation of the offenses and specifications were the correct

3.

statement of the jointly-recommended sentence[,]" so his plea was unknowing and involuntary and the plea to the RVO spec must be vacated.

{¶ 10} Celestine notes "when a trial court fails to fully cover other 'nonconstitutional' aspects of the plea colloquy, a defendant must affirmatively demonstrate prejudice to invalidate a plea unless a trial court completely fails to comply with a portion of Crim.R. 11(C)." *State v. Hall*, 2023-Ohio-1229, ¶ 12 (6th Dist.). Celestine maintains that he was prejudiced because the mandatory one-year prison term for the RVO spec was part of a jointly recommended sentence, which the trial court rejected.

{¶ 11} The State counters, as to the first assigned error, that Celestine got exactly what he bargained for on the RVO spec even though the trial court erred by failing to convey the maximum penalty for the spec. The State asserts that it agreed, as part of the plea agreement with the defense, to recommend that Celestine be sentenced to one consecutive year in prison for the RVO spec. The State argues that this recommendation was reiterated at sentencing by the State and the defense, and the court then sentenced Celestine on the RVO spec to this one-year consecutive term, just as negotiated. The State submits that justice would not lie in reversing or remanding on the RVO spec for failing to inform Celestine that he could have received up to nine more years for the spec, since that did not occur. The State contends that just because Celestine was not sentenced as negotiated as to the other crimes does not negate that he received the recommended sentence on the RVO spec.

4.

{¶ 12} Regarding Celestine's claim that he did not enter a guilty plea to the RVO spec, the State references the plea hearing where the following occurred. The prosecutor stated the terms of the negotiated plea that, inter alia, Celestine will "withdraw . . . the not guilty plea to the repeat violent offender spec . . . [and] [t]he joint recommendation is for twelve (12) years. It would be eleven (11) years on a rape . . . with an additional year on the repeat violent offender specification." The State submits that Celestine and his lawyer indicated agreement to this recitation. Then, the court explained that it needed to advise Celestine of his rights "before I can accept your guilty pleas to these three (3) charges and to the remaining specifications[.]" The State claims that after Celestine waived his constitutional rights, he indicated he believed his guilty pleas and "these admissions to specifications" were in his best interest and asked the court to accept them. The court found that Celestine "entered a knowing and voluntary admission to [the RVO] specification . . . acknowledging that he is a repeat violent offender" and accepted the admission to the "specific specifications[.]"

**Law**

{¶ 13} A defendant's plea must be made knowingly, intelligently, and voluntarily. *State v. Dangler*, 2020-Ohio-2765, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29 (1992). "Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527 (1996).

{¶ 14} Crim.R. 11 sets forth the procedures that trial courts are to follow when accepting pleas and "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *Dangler* at ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). Crim.R. 11 states, in pertinent part:

. . .

(C) Pleas of Guilty . . . in Felony Cases.

. . .

(2) In felony cases the court may refuse to accept a plea of guilty . . . and shall not accept a plea of guilty . . . without first addressing the defendant personally . . . and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty . . . and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 15} In *Dangler,* the Ohio Supreme Court rejected the tiered analysis of partial or substantial compliance and strict or literal adherence with Crim.R. 11, and instead set forth a less complicated standard to be applied, which requires the following inquiry:

6.

(1) has the trial court complied with the relevant provision of the rule?
(2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and
(3) if a showing of prejudice is required, has the defendant met that burden?

*Id.* at ¶ 17.

{¶ 16} Unless the trial court fails to explain a constitutional right or completely fails to comply with a portion of Crim.R. 11(C), the appellant has the burden to show prejudice in order to have a plea vacated. *State v. Johnson*, 2023-Ohio-2008, ¶ 14 (6th Dist.), citing *State v. Sarkozy*, 2008-Ohio-509, ¶ 22 and *Dangler* at ¶ 13-16. "[T]he maximum-penalty advisement is not a constitutional requirement." *Dangler* at ¶ 23. To establish prejudice, an appellant is required to demonstrate that he would not have entered a plea had the trial court properly advised him of the effect of the plea. *Johnson* at ¶ 17, 19.

**Analysis**

{¶ 17} Upon review, the record shows that the trial court did not fully comply with Crim.R. 11(C)(2)(a), as the court mentioned the spec during the plea colloquy, but failed to inform Celestine of the maximum penalty for the RVO spec. Since a maximum-penalty advisement involves a nonconstitutional right, Celestine must show he was prejudiced in order to invalidate his plea to the RVO spec.

{¶ 18} At the plea hearing, the prosecutor detailed the terms of the plea agreement including the jointly recommended sentence and set forth part of the recommended sentence was for "twelve (12) years. It would be eleven (11) years on a rape . . . with an

7.

additional year on the repeat violent offender specification." Celestine and his counsel agreed with the prosecutor's recitation of the recommendation. The trial court informed Celestine that it would consider the jointly recommended sentence, but it was not binding on the court. Celestine then conferred with his counsel, off the record, after which Celestine indicated to the court that he understood the recommendation was not binding.

{¶ 19} The record reveals that at the sentencing hearing, the State recommended that Cellestine be sentenced to 12 years in prison. The trial court followed the joint sentence recommendation for the RVO spec and Celestine received the one-year prison term for the RVO spec, to which he agreed in the jointly recommended sentence. While Celestine claims that he was prejudiced because the mandatory one-year prison term for the RVO spec was part of the jointly recommended sentence which was rejected by the trial court, we find no merit to this claim. The record is clear that Celestine was told at the plea hearing that the recommendation was not binding on the court. Thus, we find that Celestine has not shown that he suffered prejudice due to the court's decision to follow part, but not all, of the recommendation, nor did Celestine meet his burden of showing that he would not have pled guilty had the trial court informed him during the plea colloquy of the maximum penalty for the RVO spec. Celestine has not demonstrated prejudice, and is therefore not entitled to have his plea vacated as to the RVO spec.

{¶ 20} Accordingly, we find Celestine's first and second assignments of error not well-taken.

8.

## Third Assignment of Error

{¶ 21} Celestine argues the prosecutor committed misconduct at the sentencing hearing by making inflammatory comments which swayed the trial court to reject the jointly recommended sentence. Celestine asserts the prosecutor's misconduct included: (1) using non-statutory aggravating factors to advocate for a higher sentence, by speculating about the victim's mental state; (2) referring to matters outside of the record in order to arouse an emotional response, by showing irrelevant photographs which were not in evidence and by referencing uncharged other acts evidence; and (3) showing inflammatory photos which were designed to inflame horror and outrage and persuade the court to ignore the jointly recommended sentence. Celestine submits the prosecutor showed multiple photos of strangulation marks on the victim, multiple photos of the same bruises and cut marks and close ups of the same images.

{¶ 22} Celestine asserts he entered his plea premised on a jointly recommended sentence and although the prosecutor did not have to sit mute at sentencing, the prosecutor should not have attempted to inflame the passions of the trial court. Celestine argues "[t]he appearance is that the prosecutor agreed upon a sentence and then acted at sentencing so as to cause the trial court to reject the agreed-upon sentence."

{¶ 23} Celestine contends that he was prejudiced by the misconduct because but for these instances of misconduct, the result would have been otherwise - the trial court would have accepted the jointly recommended sentence. Celestine also argues his punishment should reflect the crimes for which he was convicted or pled guilty and

should not be based on passion or bias. Celestine asserts that he did not receive a fair sentencing hearing, free from prosecutorial misconduct, so a new sentencing hearing should be held without the hyperbole, other acts evidence and repetitive photographs.

{¶ 24} The following are the prosecutor's comments with which Celestine has an issue:

> Your Honor, this case is an example of how insecurity can quickly turn into brutality. . . [The victim] was brutally victimized and attacked by [Celestine]. She was the victim of that man's aggressive nature in the physical sense, mentally, emotionally, sexually and all the ways in between that somebody can be victimized by another human being. She was raped in more ways than one, physically assaulted, headbutted, slapped, strangled at least three (3) times. She had a knife forced against her neck, her side, her wrist, each . . . to the point of cutting her skin. And she nearly had someone else's pill shoved down her throat, all while being told by that man that she was going to die.
>
> See the Defendant, he harbored a delusional theory that [the victim] was sleeping around with anyone that would cross her path. He accused her of sleeping with people that she didn't even know. This is what made him beyond angry and this was his justification for treating her in ways that no human being should ever have to endure. . .
>
> These photos show ligature marks to her throat, bruises covering her entire body, cut marks to her throat, wrists and side, and I would also like to mention I personally saw the defeat and pure turmoil in her eyes in those photos.
> . . .
>
> Her face becomes red hot, eyes feel like they were bulging out but she wouldn't look at him. This is what made him only more angry and so he squeezes harder. All she could think about was this was the end. She had her family flashing through her mind, about what her family is going to think at the funeral, what they would say. About leaving her children behind. About whether or not her grandchildren would remember her.
> . . .

10.

Your Honor, the Court was not able to see the photos that would have been presented at the trial. I do have those on a flash drive. I'd like to present those now. These are the photos that [the victim] took two (2) days after the event . . . [She] took what she said [was] the longest shower of her life until the hot water had run out and took more photos.

. . .

And then I also have this power point that would have been presented during the trial as well. [More photos of the victim followed.] . . . Serious[] force was used in order to cause a bruise like that.

. . .

Your Honor, this was a case about control, insecurity and brutality.

. . .

This was not the first time that he had actually strangled [the victim]. As the Court is aware, Your Honor received my motion for other acts evidence presentation during the trial. There were at least two (2) other occasions prior where he had strangled her and left very serious injuries upon her. Those went unreported because of the hold that he had on her. This is . . . in compilation with his, the Defendant's other prior violent crimes. . . After . . . this incident, Your Honor, [the victim] was finally able to muster up the bravery to report the savagery and brutality that the Defendant had inflicted upon her . . . the effects of which she is still suffering today.

. . .

He must be held accountable for the pain he inflicted. He must have his just desserts. This is a man who does not belong in society. He must be held behind bars for a lengthy period of time to protect those vulnerable out here in society.

. . .

Your Honor, anything less than twelve (12) years would seriously demean the seriousness of the Defendant's offenses and would be inadequate to punish the offender and protect the public. . . [T]his violent sexual predatory deserves a minimum twelve (12) years behind bar[s]. That is what the State is asking for you to impose today.

{¶ 25} In support of his arguments, Celestine cites to numerous cases including:

*State v. Powers*, 2019-Ohio-3321 (3d Dist.); *State v. Schrack*, 2024-Ohio-2654 (5th

11.

Dist.); *State v. Dixon* 2022-Ohio-2807, ¶ 30 (4th Dist.) ("'[A] defendant has the burden to show that a reasonable probability exists that, but for the prosecutor's misconduct, the result of the proceeding would have been different.'"); *State v. Oko*, 2007-Ohio-538, ¶ 28 (8th Dist.) ("entertaining argument that prosecutor statements during sentencing were outside the record"); *State v Combs*, 62 Ohio St.3d 278, 283 (1991), citing *State v. Davis*, 38 Ohio St.3d 361, 367 (1988) ("[A] prosecutor may commit misconduct by 'improperly injecting nonstatutory aggravating circumstances' into a sentencing argument."); *State v. Loza*, 71 Ohio St.3d 61, 78-79 (1994) ("[A] prosecutor may not comment on matters outside the record in order 'arouse an emotional response.'"); *State v Kirkland*, 2014-Ohio-1966, ¶ 87; and *State v. Thompson*, 33 Ohio St.3d 1, 14-15 (1987).

{¶ 26} Celestine acknowledges his trial counsel did not object to the prosecutor's comments, so this assigned error is reviewed for plain error.

{¶ 27} The State counters that Celestine relies, in part, on death penalty cases where alleged prosecutorial misconduct occurred during sentencing, but R.C. 2929.12(A) provides, in addition to the specifically enumerated factors, that the trial court can consider "any other factors that are relevant to achieving [the] purposes and principles of sentencing." The State argues that the restrictions applicable to the penalty-phase of death penalty cases do not apply to a regular sentencing hearing.

{¶ 28} The State contends that it is improper for a prosecutor to discuss evidence outside of the record during closing arguments at trial, but no such restriction applies to sentencing hearings. Evid.R. 101(D)(3). The State also asserts that a sentencing court

12.

may consider other acts evidence like prior arrests, unindicted acts, not guilty verdicts and dismissed charges, citing *State v. Boatman*, 2022-Ohio-1191, ¶ 20 (6th Dist.).

{¶ 29} The State further argues the facts of the crimes committed by Celestine were set forth in the presentence investigation report ("PSI") and by the victim in her statement at the sentencing hearing. The State contends the victim's statement was compelling while Celestine's statement at the sentencing hearing did not help him. The State maintains there was substantial evidence to support the sentence imposed by the trial court without the prosecutor's remarks and there was no evidence in the record that the court relied on the prosecutor's statements. In addition, the State observes that the trial court is presumed to consider only relevant, material and competent evidence in arriving at a sentence, unless the contrary affirmatively appears from the record, pursuant to *State v. Dennis*, 79 Ohio St.3d 421, 433 (1997).

## Additional Law

### Plain Error

{¶ 30} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For an error to be a plain error under Crim.R. 52(B), three prongs must be satisfied: (1) there must be an error, which means a deviation from a legal rule; (2) the error must be an obvious defect in the trial proceeding; and (3) the error, with reasonable probability, was prejudicial, in that it affected the outcome of the trial. *State v. Knuff*, 2024-Ohio-902, ¶ 117, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

13.

**Prosecutorial Misconduct**

{¶ 31} Prosecutorial misconduct occurs when a prosecutor makes a statement which is improper, and the improper statement causes prejudice to a defendant. *State v. Binder*, 2000 WL 145116, *2 (6th Dist. Feb. 11, 2000), citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). Factors which an appellate court should consider in deciding whether prejudice occurred include: (1) the nature of the statements, (2) whether an objection was lodged, (3) whether corrective instructions were given, and (4) the overall strength of the evidence against the defendant. *Binder* at *2. Another factor is whether the alleged misconduct was an isolated occurrence in an otherwise correctly tried case. *Id.*, citing *State v. Braxton*, 102 Ohio App.3d 28, 41 (8th Dist. 1995). Moreover, "any effect of an improper argument made by the State at sentencing can by cured by the trial court's independent assessment of the sentencing factors." *State v. Lundgren*, 73 Ohio St.3d 474, 489 (1995). A reversal due to prosecutorial misconduct is not warranted unless it is clear, beyond a reasonable doubt, that the outcome of the trial would have been different but for the misconduct. *Binder* at *2, citing *Smith* at 15.

**Sentencing/Evidence**

{¶ 32} Evid.R. 101(D)(3) provides the Ohio Rules of Evidence do not apply in sentencing proceedings. Further, this court has consistently held that evidence of other crimes, including criminal charges that were dismissed as a result of a plea agreement, may be considered at sentencing. *State v. Lanning*, 2020-Ohio-2863, ¶ 16-17 (6th Dist.);

14.

*State v. Lewis*, 2015-Ohio-4629, ¶ 7 (6th Dist.); *State v. Finn*, 2010-Ohio-2004, ¶ 8 (6th Dist.).

{¶ 33} R.C. 2929.19(A) applies to felony sentencing hearings and states in relevant part that "[a]t the hearing, the offender, the prosecuting attorney . . . may present information relevant to the imposition of sentence in the case."

**Analysis**

{¶ 34} Celestine sets forth three instances of alleged prosecutorial misconduct, which we will address, in turn.

**Non-statutory Aggravating Factors - Speculating About the Victim's Mental State**

{¶ 35} Celestine challenges the prosecutor's statements that all the victim "could think about was this was the end. She had her family flashing through her mind, about what her family is going to think at the funeral, what they would say. About leaving her children behind. About whether or not her grandchildren would remember her."

{¶ 36} At the sentencing hearing, the victim thanked the prosecutor for giving a thorough summary of the tragic events of the "horrible, terrorful night" and "sparing [her] from having to read the statement of the evening that changed [her] life . . . [when she] almost got murdered." The victim shared how Celestine "slowly gained his power and control over [her]. Telling lies and cheating on [her], nearly taking her life in the end. . . by beating [her], mocking [her] as [she] cried, terrorizing [her], and toying around with [her] life." She "survived a horrible assault" where she endured trauma and was choked

15.

so she could not breathe. She had a permanent spot on her forehead from where Celestine headbutted her. She also had physical pain, nightmares, flashbacks, stress, anxiety, fear and emotional distress. She described how it was tough having "the mental anguish of having survived a near death experience and rape." She discussed how her children were "so grateful that their mother was still alive and they still had their mother."

{¶ 37} Upon review of the record and the applicable law, we find the prosecutor's remarks were not improper. While the prosecutor offered a few suggestions as to what the victim was thinking during the incident, the prosecutor did not engage in gross speculation as to the victim's thoughts, especially in light of the victim's own comments and the gratitude she expressed to the prosecutor for disclosing the events surrounding the crimes so that she did not have to do so.

**Matters Outside of the Record to Arouse an Emotional Response**

{¶ 38} Celestine takes issue with the prosecutor showing photographs which he claims were irrelevant and not in evidence, and by referencing uncharged other acts evidence.

{¶ 39} Regarding the photos, Celestine did not proffer the photographs, therefore we did not view the photos and we are therefore unable to determine their relevance. Further, R.C. 2929.19(A) allows the prosecutor at the sentencing hearing to present information relevant to the imposition of sentence, and R.C. 2929.12(A) provides that the trial court can consider "any other factors that are relevant to achieving [the] purposes and principles of sentencing." With respect to uncharged other acts evidence, the law

16.

permits a sentencing court to consider other acts evidence. *See Boatman*, 2022-Ohio-1191, at ¶ 20 (6th Dist.); *Lanning*, 2020-Ohio-2863, at ¶ 16-17 (6th Dist.); *Lewis*, 2015-Ohio-4629, at ¶ 7 (6th Dist.); *Finn*, 2010-Ohio-2004, at ¶ 8 (6th Dist.).

{¶ 40} In addition, the plea agreement did not prohibit the prosecutor from speaking or offering photographs at sentencing. Had Celestine desired for the prosecutor to remain silent at sentencing, other than articulating the joint sentence recommendation, that silence should have been a condition or provision included in the plea agreement. Since nothing in the law or the plea agreement precluded the prosecutor from speaking about the victim or showing pictures of the victim to the court at the sentencing hearing, we find no prosecutorial misconduct and no prejudice to Celestine.

**Showing Inflammatory Photos to Inflame Horror and Outrage**

{¶ 41} Celestine argues the prosecutor used inflammatory photographs of the victim to persuade the court to ignore the jointly recommended sentence. Again, Celestine did not proffer the photos, therefore, having not seen the photos, we are unable to decide if they are inflammatory. Also, as set forth above, R.C. 2929.19(A) permits the prosecutor to present information at the sentencing hearing, which is relevant to the imposition of sentence, and R.C. 2929.12(A) sets forth that the trial court can consider "any other factors that are relevant to achieving [the] purposes and principles of sentencing." In addition, we find nothing in the record, other than Celestine's speculation, that indicates that the photos shown by the prosector at the sentencing

17.

hearing caused the court to ignore the jointly recommended sentence.  Hence, we find no prosecutorial misconduct, no plain error, and no prejudice to Celestine.

{¶ 42} Accordingly, we find Celestine's third assignment of error not well-taken.

{¶ 43} The judgment of the Williams County Court of Common Pleas is hereby affirmed.  Celestine is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See, also*, 6th Dist.Loc.App.R. 4.

| Thomas J. Osowik, J. | [[Applied Signature]] |
| | JUDGE |
| Christine E. Mayle, J. | [[Applied Signature 2]] |
| | JUDGE |
| Myron C. Duhart, J. | [[Applied Signature 3]] |
| CONCURS. | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.