[Cite as *State v. Schneider*, 2025-Ohio-4366.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MASON L. SCHNEIDER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MA 0014**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2024 CR 00615

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lynn Maro,* Mahoning County Prosecutor, *Atty. Kristie M. Weibling*, *Atty. Ralph M. Rivera,* Assistant Mahoning County Prosecutors, for Plaintiff-Appellee and

*Atty. Edward A. Czopur*, for Defendant-Appellant.

Dated:  September 17, 2025

**Robb, P.J.**

**{¶1}** Defendant-Appellant Mason L. Schneider appeals after entering a guilty plea to six sexual offenses involving six different children and receiving a jointly recommended sentence from the Mahoning County Common Pleas Court. The participants in the initial plea and sentencing hearing believed three of the six counts were subject to indefinite sentencing under the Reagan-Tokes law. Within hours of the hearing and before any judgment was rendered, they realized only one count could potentially invoke this type of sentencing (as only one count had a date range extending after the statute's effective date). As a result, on the day after the initial hearing, plea discussions were resumed, the written plea agreement was amended, and the hearing was reopened. The parties jointly recommended the same 18-year total sentence but without any potential tail, and the court adopted the agreed upon sentence.

**{¶2}** Appellant claims his plea was not knowingly, voluntarily, and intelligently entered because at the initial hearing, the court, his attorney, and the state misadvised him on the maximum penalty he faced. He also says this demonstrates ineffective assistance of counsel. For the following reasons, in a holding limited to the particular facts of this case, the trial court's judgment is affirmed.

<u>STATEMENT OF THE CASE</u>

**{¶3}** On September 19, 2024, Appellant was indicted on thirteen counts involving six minor victims of sexual assault. At arraignment, he was appointed an attorney, who received discovery from the state and attended a pretrial on October 9, 2024. The jury trial was set for November 18, 2024. This attorney filed a motion to withdraw because after he met with Appellant to discuss discovery and the charges, Appellant's son called demanding he withdraw as counsel and threatening to file a grievance.

**{¶4}** The court granted the motion and appointed substitute counsel. After a status hearing, the final pretrial was reset for November 26, 2024 and the jury trial was reset for December 2, 2024. (10/31/24 J.E.). Appellant's attorney reviewed the initial discovery packet on November 6, 2024. The state thereafter filed a bill of particulars and its witness list. Through a motion in limine, defense counsel sought to exclude evidence, including the search history on Appellant's phone, his jail calls, and a police interview. At

the final pretrial after negotiations by counsel, the defense attorney informed the court Appellant declined the state's plea offer.  (11/27/24 J.E.).

{¶5}    A week later, on the day of trial, Appellant entered a written plea agreement agreeing to plead guilty to six charges, each related to a different minor victim.  These offenses were listed by count number, name of offense, statutory subdivision, and degree of felony.

{¶6}    Count one rape was a first-degree felony.  R.C. 2907.029(A)(2) (sexual conduct purposely compelled by force or threat of force), (B).  Count five attempted gross sexual imposition was a fourth-degree felony.   R.C. 2923.02 (attempt); R.C. 2907.05(A)(4) (the victim of sexual contact was under age 13), (C)(2).   Count six attempted rape was a second-degree felony.   R.C. 2923.02; R.C. 2907.02(A)(1)(c) (reasonable cause to believe the victim's ability to resist or consent was substantially impaired by a mental or physical condition), (B).  Count nine gross sexual imposition was a fourth-degree felony.  R.C. 2907.05(A)(5) (reasonable cause to believe the victim's ability to resist or consent was substantially impaired by a mental or physical condition, (C)(1).    Count eleven attempted rape was a second-degree felony.    R.C. 2907.02(A)(1)(c),(B).  In count thirteen, compelling prostitution was a third-degree felony.  R.C. 2907.21(A)(2)(a) (knowingly encourage or otherwise facilitate a minor to engage in sexual activity for hire, whether or not the age was known), (C).

{¶7}    The state agreed to dismiss the other seven charges, which included an additional first-degree felony rape, an additional second-degree felony attempted rape, and other felonies of the fourth or fifth degree.  The plea agreement explained the rape count carried a mandatory prison term and prison was presumed necessary on the attempted rape counts.

{¶8}    In listing the sentencing potentials and in separately listing the maximum sentences for each offense, the agreement applied indefinite sentencing ranges for the felonies of the first and second degree (rape and two attempted rapes) under statutory amendments known as the Reagan-Tokes law.  The parties agreed to jointly recommend a total prison sentence of 18 to 23.5 years (which necessarily required some consecutive service) and agreed Appellant was subject to registration as a Tier III sex offender.

{¶9} At the plea hearing, the court explained Appellant's constitutional and other rights. Using the numbers provided by the parties in the plea agreement, the court explained the sentencing ranges on the counts. As to the recommended aggregate sentence of 18 to 23.5 years, the court explained the Reagan-Tokes law presumed he would be released at the lower end of the indefinite range but he could remain incarcerated up to the ultimate maximum sentence of 23.5 years depending on the request of the prison. The court then ensured Appellant understood the court was not required to accept the recommendation but nevertheless assured him, "I have already made the commitment, so I would never double cross you. But it is up to me, and I have approved this recommended sentence." (12/2/24 Tr. 15). The court accepted his plea of guilty after ensuring Appellant read through the written plea agreement with his attorney, was not under the influence of any substance, and wished to waive the rights discussed.

{¶10} The case proceeded to sentencing where one of the victims spoke. The court adopted the jointly recommended sentence of 18 to 23.5 years by announcing the following six consecutive sentences: 11 to 16.5 years for rape in count one; 1 year for attempted gross sexual imposition in count five; 2 years for attempted rape in count six; 1 year for gross sexual imposition in count nine; 2 years for attempted rape in count eleven; and 1 year for compelling prostitution in count thirteen. (12/2/24 Tr. 22).

{¶11} Before the written plea agreement was filed and before any judgment memorializing the plea or sentence was issued, it was realized the date ranges in the indictment showed the rape in count one and the attempted rape in count six were committed *before* the March 22, 2019 effective date of the Reagan-Tokes law. The date range for the attempted rape in count eleven (1/1/19-12/31/19) spanned both before and after the statute's effective date.

{¶12} Accordingly, the day after the plea and sentencing hearing, the parties reconferred and the case was reopened. The written plea agreement was amended to eliminate all references to an indefinite sentence. After amendment by the parties, the notice of potential prison terms in the handwritten portion of the written plea agreement stated:

> Count One:   ~~Minimum indefinite prison term of 3-4.5 years to maximum~~
> ~~indefinite term of 11-16.5 years~~          *3-11 years*

Count Five:  6 - 18 months

Count Six:  ~~Minimum indefinite term of 2-3 years to maximum indefinite term of 8-12 years~~                    *2-8 yrs.*

Count Nine:  6 - 18 months

Count Eleven:  ~~Minimum indefinite term of 2-3 years to maximum indefinite term of 8-12 years~~          *2-8 yrs.*

Count Thirteen:  9, 12, 18, 24, 30, or 36 months

(Plea at 2).  Likewise, the agreement's separate section on maximum penalties was amended so the rape count said 11 years instead of 11-16.5 years and the two attempted rape counts said 8 years instead of 8-12 years.  (Plea at 3).  And, the section in the written plea containing the agreed sentence was amended to read, "joint recommendation of 18-~~23.5~~ years in the state penitentiary."  (Plea at 5).  Each strike-through with replacement was initialed by the prosecutor, defense counsel, and Appellant.

{¶13} After these amendments to the plea agreement, the court went on the record, asking Appellant, "Did you get this good news?"  Appellant answered in the affirmative.  (12/3/24 Tr. 2).  The court then memorialized the realization that only one of the counts was subject to Reagan-Tokes statutory amendments because the other felonies of the first and second degree predated the effective date of the statute.  After suggesting the attorneys had been scolded, the court noted the prosecutor agreed to refrain from insisting indefinite sentencing applied to the one potentially applicable count.

{¶14} The judge voiced he was willing to "impose a term of 18 years total; same way I did it yesterday, but with none of the indefinite aspects of that sentence imposed." The court asked Appellant if he understood this, and Appellant said he did, as did both attorneys.  The court then confirmed with counsel that "everybody is agreeing" the 18-year total sentence would be formulated by imposing 11 years on count one and running the various sentences on the other charges consecutively.  (12/3/24 Tr. 3).

{¶15} When the court pointed out this was an agreed-upon sentence, both sides agreed consecutive sentencing findings were not required.  Nevertheless, the court made consecutive findings after expressing concern a reviewing court would require consecutive sentence findings despite the total sentence being jointly recommended.

Case No. 25 MA 0014

**{¶16}** The court imposed the jointly recommended total sentence of 18 years through the following consecutive sentences:  11 years for rape in count one; 1 year for attempted gross sexual imposition in count five; 2 years for attempted rape in count six; 1 year for gross sexual imposition in count nine; 2 years for attempted rape in count eleven; and 1 year for compelling prostitution in count thirteen.  (12/3/24 Tr. 22).

**{¶17}** The court noted post-release control remained at 5 years mandatory.  Appellant and his attorney agreed the court need not readvise on post-release control or Tier III sex offender registration requirements.  Lastly, the court confirmed the three sets of initials on the written amendments to the penalty disclosures and the joint recommendation were placed there by the prosecutor, defense counsel, and Appellant.

**{¶18}**  The sentencing entry was filed the next day, December 4, 2024.  Therein, the court referred to its adoption of a jointly recommended sentence. The within appeal followed.[1]

**{¶19}**  Appellant sets forth two assignments of error.  Both relate to the impact of the above-detailed original incorrect belief that the Reagan-Tokes indefinite sentencing scheme applied to two of the six offenses (when, due to the dates of the offenses, this law was actually only potentially applicable to one of the offenses).

ASSIGNMENT OF ERROR ONE

**{¶20}**  The first assignment of error contends:

"The plea in this matter was not knowingly, intelligently, and voluntarily entered as Appellant was misadvised by his counsel, the State, and the trial court concerning the maximum penalty he was facing."

**{¶21}**  Appellant states the mistaken belief the Reagan-Tokes law applied to some offenses and the resulting incorrect advisements on the maximum potential prison terms he could serve rendered his plea invalid.  That is, the initial written and oral plea disclosure informed him the maximum prison term for rape was 11-16.5 years when he should have been told the maximum was 11 years and informed him the maximum prison term for one

---

[1]  The doctrines on a defendant's waiver of issues preceding a guilty plea and R.C. 2953.08(D)(1)'s prohibition on appealing a jointly recommended sentence that was authorized by law do not bar a defendant from appealing on grounds the plea was not knowingly, intelligently, or voluntarily entered (e.g., due to a trial court's lacking advisement or ineffective assistance of counsel on the record as affecting the plea). *State v. Richard*, 2024-Ohio-4521, ¶ 15 (7th Dist.).

of the attempted rape counts was 8-12 years when he should have been told the maximum was 8 years.

**{¶22}** "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Veney*, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). As Appellant also points out, a trial court is not permitted to accept the guilty plea without personally addressing the defendant to determine he "is making the plea voluntarily, with understanding . . . of the maximum penalty involved . . ." Crim.R. 11(C)(2)(a). The court must also advise the defendant on and determine he "understands the effect of the plea" he is entering. Crim.11(C)(2)(b).

**{¶23}** Appellant acknowledges a trial court need not strictly comply with the non-constitutional advisements in Crim.R. 11(C)(2)(a), such as the maximum sentence argument at issue herein. *See Veney* at ¶ 18, 30 (strict compliance test applies to constitutional rights and no showing of prejudice is required); *State v. Dangler*, 2020-Ohio-2765, ¶ 23 ("the maximum-penalty advisement is not a constitutional requirement"). Appellant observes, "The Reagan-Tokes Act relates to a defendant's maximum penalty." *State v. Clark*, 2024-Ohio-4930, ¶ 10 (4th Dist.) (while finding the statutory notification as to how the potential maximum works is part of sentencing not the plea).

**{¶24}** With regard to the advisements on non-constitutional rights, Appellant acknowledges the Supreme Court considers substantial compliance with Crim.R. 11 sufficient to uphold a plea. *Veney* at ¶ 14-16 (ascertaining substantial compliance by viewing the totality of the circumstances to determine whether the defendant subjectively understood the implications and consequences). The Court also allows the upholding of a plea involving partial compliance if the defendant fails to show prejudice. *Dangler* at ¶ 17, citing *State v Clark*, 2008-Ohio-3748, ¶ 32.

**{¶25}** In so doing, the Court opined it is more appropriate to simply answer the following questions: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a

showing of prejudice is required, has the defendant met that burden?" *Id.* (after noting its case law had "muddled the analysis").

**{¶26}** As recognized in *Dangler*, the "traditional rule" places a burden on the defendant to demonstrate prejudice when appealing a plea after a misadvisement on a non-constitutional aspect of Crim.R. 11(C). *Id.* at ¶ 13-17, citing, *e.g., Veney* at ¶ 17. In evaluating prejudice, the Supreme Court asks "whether the plea would have otherwise been made." *Id.* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). Accordingly, a guilty plea is not reversible in a direct appeal after a partially compliant non-constitutional advisement unless the "face of the record" shows the defendant would not have entered the plea but for the issue. *Id.* at ¶ 23-24 (upholding the plea where there was "nothing in the record indicating [the defendant] would not have entered his plea had he been more thoroughly informed of the details" of the contested item). The Supreme Court allows the consideration of written plea forms in ascertaining whether a non-constitutional issue was prejudicial. *State v. Griggs*, 2004-Ohio-4415, ¶ 16.

**{¶27}** As emphasized by Appellant, there is an exception to the prejudice requirement where the trial court's colloquy contains a "*complete* failure" to comply with a non-constitutional aspect of Crim.R. 11(C). (Emphasis original). *Dangler* at ¶ 15, citing *State v. Sarkozy*, 2008-Ohio-509, ¶ 22 (finding a complete failure where the court did not orally mention post-release control at all). "[A] complete failure to comply with Crim.R. 11(C)(2)(a) involves a trial court's complete omission in advising about a distinct component of the maximum penalty. By contrast, a trial court's mention of a component of the maximum penalty during a plea colloquy, albeit incomplete or perhaps inaccurate, does not constitute a complete failure to comply with Crim.R. 11(C)(2)(a)." *State v. Fabian*, 2020-Ohio-3926, ¶ 20 (12th Dist.).

**{¶28}** Appellant concludes the advisements on the maximum sentence for rape and attempted rape with the addition of an inapplicable Reagan-Tokes potential tail constituted a "complete failure" to comply with the maximum penalty portion of Crim.R. 11(C)(2)(a). He thus concludes his burden to show prejudice on the record does not arise.

**{¶29}** The Twelfth District reviewed a case where the trial court "mistakenly overstated the maximum sentence that could be imposed under the Reagan Tokes Act

. . ." *State v. Tutt*, 2021-Ohio-96, ¶ 13 (12th Dist.) (where the defendant was informed the maximum was 16.5 years with an aggregate of 33 years if the court ran the sentences consecutive, when the actual aggregate was 27.5 years). Before the sentencing hearing held nearly five months later, the mistake was realized. At the hearing, defense counsel indicated they discussed the sentencing matter and the defendant wished to proceed with sentencing. *Id.* at ¶ 3-4, 14. The appellate court found the advisement overstating the maximum was not a "complete failure" to comply under *Dangler* and alternatively found no prejudice on the face of the record. *Id.* at ¶ 16-17.

{¶30} Here, the trial court's advisement about the maximum sentence on the contested counts contained information on the maximum sentence on each count but added a misadvisement on the existence of a maximum tail (that could potentially be activated based on prison conduct). Specifically, he was informed the maximum for rape was 11-16.5 years indefinite instead of 11 years definite and the maximum for attempted rape was 8-12 years indefinite instead of 8 years definite. We incorporate our Statement of the Case set forth above for a detailed recitation of the written plea and the plea proceedings.

{¶31} Initially, we note after setting forth the inapplicable tails to the maximums, the trial court informed Appellant the total maximum he could face on the charges to which he was pleading guilty was 33 years. (12/2/24 Tr. 9).[2] This was the correct maximum total sentence if maximum consecutive sentences were imposed with no application of Reagan-Tokes sentencing to any offenses.

{¶32} Most notably, Appellant's argument under this assignment of error does not take into account the impact of the subsequent proceedings before the sentence was finalized by judgment entry. The record shows the parties reconvened and jointly amended the written plea agreement. This was followed by a reopened hearing. To

---

[2] The information required to be supplied under Crim.R. 11 applies only to the offenses to which a plea is being entered. *See, e.g. State v. Hall*, 2023-Ohio-1229, ¶ 15 (6th Dist.) (need not inform defendant of penalty for dismissed specification "because it did not impact the maximum penalty he faced as a consequence of his guilty plea")*; State v. Wallace*, 1979 WL 210425 (8th Dist. July 3, 1979) ("Crim. R. 11(C)(2) requires the trial court to determine a defendant's understanding of the penalties involved only for the charge upon which the defendant is pleading. It does not require such a determination relative to counts which are nolled.").

avoid a trial on a myriad of charges related to six victims and ensure a mid-range sentence, Appellant originally agreed to a jointly recommended sentence of 18 years, which could be extended to 23.5 years based on post-institutional-admission conduct. Initially, the court did orally impose this agreed sentence. After the realization of the inapplicable indefinite tail as to two offenses, Appellant then agreed to jointly recommend an aggregate sentence of 18 years in prison, which the court adopted. He thereby obtained a definite sentence with no potential longer maximum (even though one offense could have been subjected to indefinite sentencing under a plea agreement).

{¶33} The reopened hearing was not merely a reopening of sentencing (as implied by the arguments made under this assignment of error); rather, it was a reopened plea hearing as well. Even assuming the court should have re-initiated certain inquires while explaining the realized issue with indefinite sentencing or asking about the amended joint recommendation, the totality of the circumstances show Appellant subjectively understood the implications and consequences of his plea.

{¶34} Under the circumstances herein involving the amended agreement and reopened plea hearing, the issue raised herein did not constitute a "complete failure" to comply with the non-constitutional maximum penalty provision in Crim.R.11(C)(2)(a) and a showing of prejudice is therefore required to be made. The existence of prejudice is not alleged on appeal and is not supported by the record before us in any event. There is no indication Appellant would not have pled guilty but for the initial belief two offenses were subject to Reagan-Tokes indefinite sentencing when they were not. In fact, the record shows he was not prejudiced, as he maintained his guilty plea and welcomed the eliminated tail after the case was reopened before a sentencing entry was issued. He did not seek a presentence plea withdrawal or otherwise voice dissatisfaction with the amendment of the plea agreement to reduce the jointly recommended sentence. The amendment essentially construed a date range to his benefit and was not just the elimination of unavailable indefinite sentencing from two other offenses. Accordingly, under the particular circumstances of this case, Appellant's first assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TWO</u>

{¶35} Appellant's second assignment of error contends:

"Appellant was denied his right to effective counsel under both the United States and Ohio Constitutions as trial counsel failed to realize that this was not a Re[a]gan Tokes case, negotiated a plea deal under that misunderstanding, and improperly advised Appellant under that misunderstanding."

{¶36} A claim of ineffective assistance of counsel requires a showing of both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the performance was not deficient, then there is no need to review for prejudice and vice versa. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶37} On the deficient performance prong, the defendant must show "a substantial violation of any of defense counsel's essential duties to his client" so that "counsel's representation fell below an objective standard of reasonableness." *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), citing *Strickland* at 687-688. Our review is highly deferential to counsel's decisions as there are "countless ways to provide effective assistance in any given case" with strong presumptions that the conduct was within the wide range of reasonable professional assistance. *Id.* at 142, citing *Strickland* at 689. A reviewing court should refrain from second-guessing the strategic decisions of counsel. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

{¶38} On the prejudice prong, the defendant must show there is a reasonable probability the result of the proceedings would have been different but for the serious errors committed by counsel. *Id.* at 557-558. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair due to the performance of trial counsel. *Id.*, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). Lesser tests of prejudice have been rejected: "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley* at 142, fn. 1, quoting *Strickland* at 693.

{¶39} Pointing to the prior assignment of error, Appellant emphasizes his attorney participated in the misadvisement of the maximum penalty due to an incorrect belief indefinite sentencing applied to multiple offenses. Appellant says this not only led him to believe he faced a longer potential maximum term but also resulted in counsel negotiating with the state from the wrong point of view. He suggests a better deal could have been reached if the proper maximum penalties were utilized prior to commencing negotiations.

Case No. 25 MA 0014

{¶40} While Appellant's conversations with defense counsel before the initial plea hearing are not on the record, the initial advice on the maximum penalty is essentially demonstrated by the written plea agreement and the various statements on the record. Likewise, the record also essentially shows the advice on the maximum penalty was amended. The correctness of the amendments is not contested. This altered course and correction of the initial performance of counsel prior to the entry of final judgment cannot be ignored.

{¶41} Conversely, counsel's particular advice to Appellant on whether to proceed with the amendments to the written plea or his advice on the benefits of the amended joint recommendation under the amended plea agreement versus the risks of trial on all charges is not on the record. There is no indication the reopened negotiations and amended joint sentencing recommendation was negatively affected by counsel's prior incorrect belief on indefinite sentencing. Both deficiency and prejudice must be demonstrated *by the record*. *See State v. Holloway*, 2018-Ohio-5393, ¶ 50 (7th Dist.). In the absence of evidence in the record for our review of deficiency and prejudice, any opinion on the effectiveness of counsel would be based on conjecture. *Id.*, citing *State v. Prieto*, 2007-Ohio-7204, ¶ 36 (7th Dist.). In fact, the record indicates Appellant ended up obtaining an elimination of indefinite sentencing on the sole offense to which it was potentially applicable.

{¶42} The parties initially came to an agreement on a total sentence of 18-23.5 years for the six offenses being admitted, related to six different minor victims. Upon noticing the effective date of the Reagan-Tokes law predated the date ranges for two offenses, they then agreed to the jointly recommended 18 years. This involved an agreement to proceed as if a third offense was also not subject to indefinite sentencing (by giving the defendant the benefit of the doubt on the offense's commission date, which the indictment alleged occurred during a period spanning time both before and after the effective date). "The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; but, instead, whether the defense chosen was objectively reasonable." *State v. Suzuki*, 2019-Ohio-1131, ¶ 23 (7th Dist.).

{¶43} There is no indication Appellant's trial counsel failed to consider the amendments to the plea agreement with a "proper point of view" during the reopened

proceedings. Nor is there an indication Appellant's final plea agreement was prejudiced by his counsel's initial failure to notice indefinite sentencing could not apply to two offenses. In this direct appeal from the plea and sentence, we are limited to the record. This assignment of error is overruled.

{¶44} For the foregoing reasons, in a holding limited to the particular facts of this case, the judgment of the trial court is affirmed.


Waite, J., concurs.

Hanni, J., concurs.

Hanni, J., concurring opinion.

**{¶45}** I concur with the Opinion and Judgment Entry, but want to highlight that the trial court had not yet issued a written judgment entry on the plea or sentence before discovering and remedying the Reagan Tokes errors. "A court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum." *State v. Leegrand*, 2022-Ohio-3623, ¶ 8, quoting *Schenley v. Kauth,* 160 Ohio St. 109, (1953), paragraph one of the syllabus; and *State v. Henderson*, 2020-Ohio-4784, ¶ 39 (citing *State v. Hampton*, 2012-Ohio-5688, ¶ 15.)

**{¶46}** Trial court staff astutely discovered the errors and Judge Krichbaum very thoroughly remedied them by bringing Appellant and his counsel back into court the very next day after the plea hearing and sentencing. The trial court explained the errors, amended the plea agreement to reflect the remedies, had all parties initial the amended agreement, and ensured that Appellant understood the corrections.

**{¶47}** In addition, the trial court imposed the same agreed-upon sentence of 18 years in prison, with no potential longer maximum, and the prosecution even agreed to forego an indefinite sentence that may have applied to one of the counts. Thus, the trial court appropriately addressed and eliminated the errors in this continued or reopened hearing, and the lack of a written journal entry allowed for that remedy. The trial court ensured Appellant's understanding of the agreement at the hearing and then issued its written entry the next day. I thus concur with the Opinion and Judgment Entry.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**