[Cite as *State v. Hubbard*, 2025-Ohio-5604.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

    Appellee

v.

Jeffery Hubbard

    Appellant

Court of Appeals No. L-25-00073

Trial Court No. 2024 CR 2351

**DECISION AND JUDGMENT**

Decided: December 16, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant Jeffery Hubbard appeals from a judgment of the Lucas County

Court of Common Pleas, which convicted him, following a guilty plea, of one count of

domestic violence. He asserts that his guilty plea was not knowingly, intelligently, and voluntarily made. For the reasons that follow, the trial court's judgment is affirmed.

## I. Factual Background and Procedural History

{¶ 2} On September 17, 2024, the Lucas Conty Grand Jury indicted Hubbard on one count of domestic violence in violation of R.C. 2919.25(A), (D)(1), and (D)(4), a felony of the third degree.

{¶ 3} On January 14, 2025, Hubbard withdrew his initial plea of not guilty and entered a plea of guilty to the amended count of domestic violence in violation of R.C. 2919.25(A) and (D)(3), a felony of the fourth degree.

{¶ 4} Prior to accepting his plea, the trial court inquired, and Hubbard affirmed, that he understood that he was entering a plea of guilty to the fourth-degree felony domestic violence. The trial court then conducted a Crim.R. 11 plea colloquy in which it confirmed that Hubbard was aware of the potential penalties he was facing, including postrelease control, as well as the constitutional rights that he was waiving.

{¶ 5} The trial court further informed Hubbard that by entering a plea of guilty he would be required to make a factual statement regarding the circumstances of the offense. In response, Hubbard explained,

> Me and my ex-girlfriend, we worked together. We had a tree service. We was working all that day. I took her home. Her boyfriend at the time, he attacked me, tried to pull me out of my truck, and him and I got into a little scuffle, and when I got out of the scuffle, I called 911, and they arrested me for domestic violence. She said that I hit her, I believe to keep him from going to jail.

2.

**{¶ 6}** Finally, the trial court accepted Hubbard's signed plea form. Hubbard acknowledged that he had time to review the form with his attorney, that he signed each of the form's three pages, and that he did not have any questions concerning the content of the form. Relevant here, the plea form included the provisions that, "By pleading guilty I admit committing the offense and will tell the Court the facts and circumstances of my guilt," and "I know the judge may either sentence me today or refer my case for a presentence report."

**{¶ 7}** The trial court then accepted Hubbard's plea, found him guilty, and continued the matter for sentencing and the preparation of a presentence investigation report. At sentencing, the trial court ordered Hubbard to serve 12 months in prison.

## II. Assignment of Error

**{¶ 8}** Hubbard timely appeals his judgment of conviction, asserting one assignment of error for review:

> 1. Appellant's guilty plea was not knowingly, intelligently and voluntarily entered.

## III. Analysis

**{¶ 9}** "A defendant entering a plea in a criminal case must do so knowingly, intelligently, and voluntarily, and the failure of any one element renders enforcement of that plea unconstitutional." *State v. Hart*, 2024-Ohio-5622, ¶ 10 (6th Dist.), quoting *State v. Mull*, 2024-Ohio-370, ¶ 12 (6th Dist.). "Ohio's Crim.R. 11 outlines the procedures that trial courts are to follow when accepting pleas." *State v. Dangler*, 2020-Ohio-2765, ¶ 11.

3.

The rule "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *Id.*, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975).

{¶ 10} In this case, Hubbard argues that the trial court failed to comply with its requirement to advise him of his nonconstitutional rights pursuant to Crim.R. 11(C)(2)(b), which states that the trial court "shall not accept a plea of guilty" without first "[i]nforming the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence." Specifically, he contends that the trial court did not explain (1) that his guilty plea was a complete admission of guilt, (2) that the trial court could proceed directly to sentencing, and (3) that his guilty plea may be used against him at a later trial.

{¶ 11} At the outset, the State argues that Crim.R. 11(C)(2)(b) does not require the trial court to inform the defendant that his guilty plea may be used against him at a later trial. The State is correct.

{¶ 12} Crim.R. 11(C)(2)(b) requires that the trial court inform the defendant of two things: "the effect of the plea of guilty or no contest" and "that the court, upon acceptance of the plea, may proceed with judgment and sentence." "To satisfy the requirement of informing a defendant of the effect of a plea, a trial court must inform the defendant of the appropriate language under Crim.R. 11(B)," and it may do so either

4.

"orally or in writing." *State v. Jones*, 2007-Ohio-6093, paragraph two of the syllabus, ¶ 51. It thus must inform the defendant that "[t]he plea of guilty is a complete admission of the defendant's guilt," and "[w]hen a plea of guilty . . . is accepted pursuant to this rule, the court . . . shall proceed with sentencing under Crim.R. 32." Crim.R. 11(B)(1) and (3). Informing a defendant that his guilty plea may be used against him at a later trial is not provided for in Crim.R. 11(B).

{¶ 13} Hubbard nonetheless contends that the trial court was required to inform him that his guilty plea may be used against him at a later trial pursuant to R.C. 2937.09, which states, "If the charge is a felony, the court or magistrate shall, before receiving a plea of guilty, advise the accused that such plea constitutes an admission which may be used against him at a later trial." R.C. 2937.09, however, applies to a preliminary examination upon arraignment, not to a subsequent change of plea to an indictment.

{¶ 14} The relevant inquiry, therefore, is whether, prior to accepting Hubbard's guilty plea at the change of plea hearing, the trial court complied with Crim.R. 11(C)(2)(b) by informing Hubbard (1) that a plea of guilty is a complete admission of guilt and (2) that upon acceptance of the plea it could proceed with judgment and sentence.

{¶ 15} For many years, Ohio Supreme Court precedence recognized a distinction between the trial court's responsibility to inform the defendant of constitutional rights under Crim.R. 11(C)(2)(c) versus nonconstitutional rights under Crim.R. 11(C)(2)(b).

5.

{¶ 16} For constitutional rights, the trial court was required to strictly comply with the rule, and its failure to strictly comply was deemed prejudicial to the defendant. *State v. Miller*, 2020-Ohio-1420, ¶ 16; *State v. Veney*, 2008-Ohio-5200, ¶ 29.

{¶ 17} For nonconstitutional rights, the trial court was required to substantially comply with the rule, meaning that the rule was satisfied "so long as the totality of the circumstances indicates that 'the defendant subjectively understands the implications of his plea and the rights he is waiving.'" *State v. Clark*, 2008-Ohio-3748, ¶ 31, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990); *see also State v. Bishop*, 2018-Ohio-5132, ¶ 19. Furthermore, if the trial court erred by failing to meet its requirement to substantially comply with the rule, reviewing courts would then determine whether the trial court "partially complied" or "completely failed to comply" with the rule. "If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect," defined as "whether the plea would have otherwise been made." *Clark* at ¶ 32. If, however, "the trial judge completely failed to comply with the rule, e.g., by not informing the defendant of a mandatory period of postrelease control," no analysis of prejudice is implicated, and the plea must be vacated. *Id.*

{¶ 18} In *Dangler*, the Ohio Supreme Court recognized this "muddled" analysis, commenting that "those formulations have served only to unduly complicate what should be a fairly straightforward inquiry." *Dangler*, 2020-Ohio-2765, at ¶ 17. *Dangler* offered instead that,

[p]roperly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the trial court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Id.*

{¶ 19} The court in *Dangler* examined whether the trial court complied with the requirement of Crim.R. 11(C)(2)(a) to determine that the defendant is "making the plea voluntarily, with understanding of . . . the maximum penalty involved." *Dangler* at ¶ 18. In that case, the trial court had notified the defendant that he would be subject to the sex-offender-registration scheme, but did not specifically inform him of the "in-person-verification requirements, community-notification provisions, and residency restrictions." *Id.* at 21. The Ohio Supreme Court held that "[b]ecause the trial court in this case advised Dangler that he would be subject to the registration requirements of that statutory scheme, the trial court did not completely fail to comply with Crim.R. 11(C)(2)(a)'s maximum-penalty-advisement requirement." *Id.* at 22. It further held that because the trial court did not completely fail to comply with the rule, and because the maximum-penalty advisement is not a constitutional right, Dangler was required to show prejudice, which he did not do. *Id.* at 23-24.[1]

---

[1] Notably, the analysis in *Dangler* appears to have skipped its first question and failed to answer directly whether the trial court's advisement that Dangler would be subject to the sex-offender-registration scheme constituted compliance with the maximum-penalty notification under Crim.R. 11(C)(2)(a). The court instead, moved straight to its second question and concluded that the trial court's notification was not a complete failure to comply for purposes of determining whether Dangler was required to show prejudice.

7.

{¶ 20} Since *Dangler*, appellate courts have struggled with how to treat the new analysis. Some courts have cited *Dangler* but continued to maintain the strict/substantial compliance distinction for constitutional and nonconstitutional rights. *See, e.g., State v. King*, 2025-Ohio-1570, ¶ 9 (2d Dist.); *State v. Conner*, 2021-Ohio-1769, ¶ 11-12 (3d Dist.); *State v. Doucoure*, 2025-Ohio-4770, ¶ 12, 15 (4th Dist.); *State v. Hector*, 2025-Ohio-2819, ¶ 12 (5th Dist.); *State v. Schneider*, 2025-Ohio-4366, ¶ 23-24 (7th Dist.); *State v. Conrad*, 2024-Ohio-2986, ¶ 7 (9th Dist.); *State v. McFadden*, 2021-Ohio-2204, ¶ 17 (10th Dist.). Other courts have held that *Dangler* has done away with the strict/substantial compliance analysis. *See e.g., State v. Walker*, 2024-Ohio-6079, ¶ 27 (1st Dist.); *State v. Fontanez*, 2024-Ohio-4579, ¶ 9 (8th Dist.); *State v. Howard*, 2025-Ohio-340, ¶ 25 (11th Dist.); *State v. Rogers*, 2020-Ohio-4102, ¶ 15-17 (12th Dist). This court is not alone in doing both. *Compare State v. Taylor*, 2024-Ohio-5034, ¶ 10 (6th Dist.) (maintaining the strict/substantial compliance standard); *State v. Vasquez*, 2024-Ohio-2496, ¶ 19 (6th Dist.); *State v. Hermes*, 2023-Ohio-2011, ¶ 27-29, *with State v. Scanes*, 2023-Ohio-1096, ¶ 45 (6th Dist.) (recognizing that *Dangler* "rejected the many tiered analysis of partial or substantial compliance and strict or literal adherence with the rule"); *State v. Celestine*, 2025-Ohio-1905, ¶ 15 (6th Dist.); *State v. Johnson*, 2023-Ohio-2008, ¶ 14-17 (6th Dist.); *State v. Zmabrano*, 2021-Ohio-1906, ¶ 10 (6th Dist.).

{¶ 21} Further guidance from the Ohio Supreme Court may be coming soon as it has recently held oral arguments in *State v. Fontanez*, case No. 2024-1464, in which it certified a conflict on the following question:

8.

Does a trial court completely fail to comply with Crim.R. 11(C)(2) so as to render a guilty plea invalid when it fails to explicitly state that [a] guilty plea constitutes a complete admission of guilt[] where the trial court otherwise complies with the requirements of Crim.R. 11(C)(2), the admission of guilt is obvious from the context of the plea colloquy, and the defendant does not assert actual innocence?

One issue in that case is the effect of *Dangler* on the court's prior precedence.

{¶ 22} Notwithstanding the confusion surrounding what the trial court must do to comply with the various provisions of Crim.R. 11(C)(2) in a post-*Dangler* world, that issue is not before this court because the State concedes in this case that the trial court did not comply with Crim.R. 11(C)(2)(b) in that it did not inform Hubbard that his guilty plea was a complete admission of guilt. It is worth noting that in their briefs, both parties continue using the strict/substantial compliance framework and neither party cites *Dangler*. And although the State specifically concedes that the trial court did not *substantially* comply with Crim.R. 11(C)(2)(b), that concession is sufficient to conclude that the trial court did not "comply" or "comply fully" as those terms are used in *Dangler*. Indeed, to the extent that *Dangler* changes the standard the trial court must meet to satisfy the notification provisions of Crim.R. 11(C)(2)(b), *Dangler* would make the standard more stringent as "comply" or "comply fully" connotes a greater adherence to the rule than substantial compliance. Thus, if the trial court did not even substantially comply with the rule, it cannot be said that the trial court "complied" or "complied fully" with the rule.

9.

{¶ 23} Accepting the State's concession for purposes of this analysis, the next step is to determine whether the trial court's failure is "of a type that excuses a defendant from the burden of demonstrating prejudice." *Dangler*, 2020-Ohio-2765, at ¶ 17.

{¶ 24} Since the trial court's failure in this case pertains to a nonconstitutional aspect of the plea colloquy, Hubbard generally must demonstrate that he was prejudiced in that he would not have entered the guilty plea had he been properly informed. Hubbard does not attempt to make this demonstration. Instead, he relies on the exception created in *State v. Sarkozy*, 2008-Ohio-509, and recognized in *Dangler* that "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Emphasis sic.) *Dangler* at ¶ 15, citing *Sarkozy* at ¶ 22.

{¶ 25} In *Sarkozy*, the sentencing court failed entirely to inform the defendant of the mandatory term of postrelease control, contrary to the requirements of Crim.R. 11(C)(2)(a). The Ohio Supreme Court vacated the plea without a showing that the defendant otherwise would not have entered into it because "[a] complete failure to comply with the rule does not implicate an analysis of prejudice." *Sarkozy* at ¶ 22.

{¶ 26} Hubbard argues that the trial court completely failed to comply with Crim.R. 11(C)(2)(b). The State, on the other hand, argues that the trial court partially complied with the rule. Again, the State's position is correct.

{¶ 27} As to the requirement to inform Hubbard that his guilty plea was a complete admission of guilt, the trial court told him that he would be required to make a

10.

factual statement concerning the circumstances of the offense. In addition, the signed plea form notified Hubbard that, "By pleading guilty I admit committing the offense and will tell the Court the facts and circumstances of my guilt." The trial court directly addressed Hubbard and confirmed that he reviewed the plea form with his attorney, signed every page of the form, and did not have any questions concerning any of the contents of the form. *See State v. Sheppeard*, 2023-Ohio-3278, ¶ 15 (2d Dist.) ("substantial compliance with Crim.R. 11(C)(2)(b) when the plea form includes the required advisements and the defendant indicates at the plea hearing that he or she has read and understood the plea form"); *see also State v. Jones*, 2007-Ohio-6093, ¶ 51 (trial court must inform the defendant of the effect of the plea "[w]hether orally or in writing"). Moreover,

> In *[State v.] Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, at ¶ 14, the Supreme Court of Ohio recognized that a trial court's failure to inform the defendant of the effect of a guilty plea, specifically, is subject to a unique analysis because "[a] plea of guilty *is* a complete admission of guilt." (Emphasis sic.) That is, when a defendant affirmatively indicates that he or she is "guilty" of the charge, it is —necessarily and patently—a complete admission of guilt. In other words, "a complete admission of guilt" is more than just the *effect* of a guilty plea; it is the *very nature* of a guilty plea. For that reason, "a defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt. In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial." *Id.* at ¶ 19.

*State v. Willis*, 2019-Ohio-1182, ¶ 16 (6th Dist.).

{¶ 28} Here, by the very nature of the guilty plea, Hubbard understood that he was admitting his guilt. This understanding was bolstered by the signed plea form in which

he admitted to committing the offense. The trial court, therefore, did not completely fail to comply with the requirement to inform Hubbard of the effect of his guilty plea. *See Willis* at ¶ 17.

{¶ 29} As to the requirement to inform Hubbard that upon acceptance of the plea it could proceed with judgment and sentence, again the plea form expressly asked Hubbard to agree that "I know the judge may either sentence me today or refer my case for a presentence report." Like the notification concerning the effect of the plea, the trial court's direct confirmation that Hubbard went over the plea form with his attorney, signed each page, and did not have any questions regarding its content, is, at the least, not a complete failure to comply with Crim.R. 11(C)(2)(b). *See State v. Swaney*, 2020-Ohio-210, ¶ 21 (2d Dist.) (pre-*Dangler*, plea knowingly, intelligently, and voluntarily made where signed plea form indicated the defendant understood that the trial court could proceed immediately to sentencing); *Jones* at ¶ 51.

{¶ 30} Because the trial court did not completely fail to comply with Crim.R. 11(C)(2)(b) regarding the nonconstitutional notifications of the effect of a guilty plea and the fact that the trial court may proceed immediately to sentencing, Hubbard must demonstrate prejudice, i.e., that he would not otherwise have made the plea. *Dangler* at ¶ 23. Considering that Hubbard does not attempt to make such a showing, he cannot succeed on his claim that his guilty plea must be vacated because it was not knowingly, intelligently, and voluntarily made.

{¶ 31} Accordingly, his assignment of error is not well-taken.

12.

## IV. Conclusion

{¶ 32} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Hubbard is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

_____
JUDGE

Gene A. Zmuda, J.

_____
JUDGE

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.